UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN F. TOMASIC and KATHERINE A.
HOOVER, Owners of Sunny,

        Plaintiffs,

v.                                                              CASE NO. 3:15-cv-1481-J-34MCR

BRAD EUBANKS, SOUTHERN DRYDOCK,
INC., DIP, Insured, and TRAVELERS
PROPERTY CASUALTY COMPANY
OF AMERICA,

        Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on the following motions, which were

referred to the undersigned for a report and recommendation:

    (1)    Plaintiffs' Motion to Set Aside the Mediation Agreement of October

           26, 2017 and Order Binding Arbitration ("Motion to Set Aside") (Doc.

           184), Defendant Travelers Property Casualty Company of America's

---

[1] "Within 14 days after being served with a copy of [this report and recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

Opposition thereto ("Travelers' Opposition") (Doc. 186), Defendant

Southern Drydock, Inc.'s Notice of Joining in Travelers' Opposition

and Supplemental Opposition to Plaintiffs' Motion to Set Aside

("Southern's Opposition") (Doc. 187), and Defendant Brad Eubanks's

Opposition to Plaintiffs' Motion to Set Aside and Motion to Enforce

Settlement ("Eubanks's Opposition and Motion to Enforce") (Doc.

189); Plaintiffs' Notice to the Court That the Mediation Agreement

Expired After Thirty Days ("Plaintiffs' Notice to the Court") (Doc. 191)

and Travelers' Response thereto (Doc. 193);

(2)   Travelers' Motion for Sanctions Against Plaintiffs ("Travelers' Motion

for Sanctions") (Doc. 188) and Plaintiffs' Response thereto (Doc.

192);

(3)   Eubanks's Motion for Award of Attorney's Fees Pursuant to §

57.105, Florida Statutes ("Eubanks's Motion for Fees") (Doc. 194)

and Plaintiffs' Response thereto (Doc. 196).

For the reasons stated herein, the undersigned **RECOMMENDS** that

Plaintiffs' Motion to Set Aside (Doc. 184) be **DENIED**, Eubanks's Motion to

Enforce (Doc. 189) be **GRANTED**, Travelers' Motion for Sanctions (Doc. 188) be

**DENIED**, and Eubanks's Motion for Fees (Doc. 194) be **DENIED**.

## I.    Relevant Background

On October 26, 2017, all individual parties and their respective counsel and

representatives participated in a court-ordered mediation with stipulated mediator Terrance Schmidt.  (Docs. 139, 182.)  A Mediated Settlement Agreement was reached, which provided, in relevant part, that Travelers will pay to Plaintiffs an agreed-upon sum[2] in full and complete settlement of all of Plaintiffs' claims in this action against all Defendants within 30 days from Plaintiffs' execution and delivery of a release in a form satisfactory to counsel for Defendants.  (*See* Doc. 200.)  After the Mediator's Report was filed on October 30, 2017, the Court entered an Order directing the Clerk to terminate all pending motions and administratively close the case, and directed the parties to file, by December 29, 2017, a joint stipulation of dismissal or other appropriate documents to close out the file.  (Docs. 182, 183.)

On October 27, 2017, defense counsel sent to Plaintiffs a Settlement Agreement and Release of All Claims, to be signed and forwarded to the mediator along with a Joint Stipulation for Dismissal and a proposed order thereon.  (*See* Doc. 186.)  Both Plaintiffs signed the Stipulation for Dismissal.  (*See id.*)  By correspondence dated November 7, 2017, Plaintiff Hoover advised Mr. Conroy (Travelers' counsel): "My husband is unable to go to a notary or sign papers.  He is quite ill, but does not want further medical treatment.  I am

---

[2] The Mediated Settlement Agreement is presently filed under seal pursuant to the Court's Order (Doc. 197).

enclosing two copies of the agreement signed in Mr. Schmidt's office.  It is the best I can do."  (Doc. 186-1.)  She enclosed a copy of the Settlement Agreement and Release of All Claims that she signed before a notary on October 31, 2017 and a copy of the same Settlement Agreement and Release of All Claims that she signed for Mr. Tomasic on November 7, 2017, albeit without a power of attorney.  (*See* Doc. 201.)  The Release spelled out the terms of the settlement and included a confidentiality clause.  (*See id.*)

On November 17, 2017, Mr. Conroy sent a letter to Ms. Hoover, stating:

> My assistant, Jazmin, has attempted to reach out to you on numerous occasions, since last Friday, November 10, 2017 to establish contact, but has not had a response.  In coordination with Ms. Winicki [Southern's counsel], we would like to have Mr. Tomasic execute the release and exchange settlement funds. . . .
> We will send a notary to your house for Mr. Tomasic's convenience to execute the release. . . .

(Doc. 186-2 at 1.)

On November 21, 2017, he followed up with another letter:

> Pursuant to your conversation with my assistant Jazmin Vera today, you informed her that Mr. Tomasic is presently in the hospital, that Mr. Tomasic has not executed the settlement agreement and was possibly having second thoughts in executing same.  Please be reminded that this was already settled as to the dollar amount at the mediation on October 26, 2017.  My office would like to coordinate Mr. Tomasic's signature with a notary, by arranging to have a notary sent to your home if you wish and if that would be convenient for Mr. Tomasic. . . .

(*Id.* at 2.)

Then, on November 30, 2017, Mr. Conroy sent a letter to Mr. Tomasic,

stating:

> As you know the court entered an order based on the
> mediator's report that the case settled.  The parties are required to
> file a stipulation on or before December 29, 2017.
>     Although Dr. Hoover has executed the release, we have not
> yet received a notarized release from you.  Ms. Winicki has been
> funded with the settlement funds.  All we require is a signed and
> notarized release.  We have offered to send a notary to your house
> to accommodate you.

(*Id.* at 4.)

On December 1, 2017, Plaintiff Hoover, Ms. Winicki and Mr. Conroy had a

telephone conference, at which Ms. Hoover advised, for the first time, that

Plaintiffs would be moving the Court to vacate the settlement agreement and for a

new mediator, because Plaintiffs allegedly entered into the settlement agreement

under duress.  (Doc. 186 at 4.)  This phone call was Plaintiffs' conference

pursuant to Local Rule 3.01(g) prior to filing the Motion to Set Aside on December

8, 2017.  (*Id.*)

## II.    Discussion

### A.    Plaintiffs' Motion to Set Aside

Plaintiffs ask the Court to set aside the settlement agreement and to order

binding arbitration without Southern's expert's opinion.  First, Plaintiffs state that there is a discrepancy between the Mediated Settlement Agreement signed by the parties at the mediation conference and the Settlement Agreement and Release of All Claims they received afterwards, because the latter includes a confidentiality provision.  Defendants respond that because the confidentiality provision is not an essential term, the Settlement Agreement and Release of All Claims is still enforceable and binding on all parties.  The undersigned agrees with Defendants.  *See Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp.*, 302 So.2d 404, 408 (Fla. 1974)[3] ("Even though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them."); *Swisher Int'l*, 2018 WL 707421 at *2 ("Uncertainty as to non-essential elements or that the parties agree that they will enter into a more specific agreement later does not preclude [a] finding that the parties reached a settlement.") (internal citations omitted).

---

[3] "The contract law of the forum state governs the construction and enforcement of settlement agreements."  *Berman v. Kafka*, 518 F. App'x 783, 785 (11th Cir. 2013) (per curiam); *see also Miles v. Nw. Mut. Life Ins. Co.*, 677 F. Supp. 2d 1312, 1315 (M.D. Fla. 2009) ("Settlements, as agreements, are governed by the principles of Florida contract law.").  This is true even in a case premised on federal law.  *Swisher Int'l, Inc. v. Encore Vapor, Inc.*, Case No. 3:16-cv-437-J-32PDB, 2018 WL 707421, *2 n.1 (M.D. Fla. Feb. 5, 2018).

Here, the parties agreed on the essential terms, the confidentiality provision was not among those terms, and, therefore, its omission from the Mediated Settlement Agreement signed at the mediation conference does not invalidate the parties' agreement.  *See Miles*, 677 F. Supp. 2d at 1315 ("That the confidentiality and non-disparagement terms of the agreement were not fully expounded is immaterial.  Rather than being essential, these provisions go towards how the agreement will be implemented going forward."); *see also Carpaneda v. Quayside Place Partners, LLP*, No. 09-20740-CIV, 2010 WL 2696958, *2 (S.D. Fla. July 7, 2010) ("Although the Parties do not agree on the proper remedy for violations of the covenant not to sue and the confidentiality provisions, these provisions are 'mere contingencies' that were not essential to reaching the settlement drafted at mediation."); *Sands v. Wagner & Hunt, P.A.*, No. 09-60557-CIV, 2009 WL 2730469, *4 (S.D. Fla. Aug. 28, 2009) (report and recommendation adopted Sept. 16, 2009) ("[T]he proposed confidentiality provision is an ancillary matter; it is directed to the manner in which the agreement would be implemented and its exclusion does not bar enforcement of the settlement agreement."); *but see Berman*, 518 F. App'x at 786 ("[B]oth parties agreed to the agreement's essential terms—a monetary settlement payment, dismissal of certain lawsuits, and confidentiality—and there was an external

showing of agreement as to these terms.").[4]

Plaintiffs further argue that the settlement agreement should be set aside

because both Plaintiffs were under duress, which they explain as follows:

> Plaintiff John F. Tomasic was quite ill at the time of mediation.
> This illness was due to the actions and inactions taken by Travelers.
> Plaintiff Hoover did not recognize how ill he was and that he was too
> ill to actively participate in the mediation.  Dr. Hoover was exhausted
> herself from caring for Mr. Tomasic.  Shortly following the mediation,
> Mr. Tomasic was admitted to Halifax Hospital . . . for severe
> congestive heart failure and fluid on his lungs.  Following his
> discharge on November 14, 2017, Mr. Tomasic was in very fragile
> condition and any stress would make him worse.  Dr. Hoover waited
> until on or about November 29, 2017 to discuss signing the second
> agreement sent to the Plaintiffs by Travelers.  Mr. Tomasic would not
> sign that second agreement.  He was under severe duress at the
> time of mediation from his congestive heart failure.  Dr. Hoover
> pressured him to sign on October 26, 2017 because she was under
> severe duress at the time.  If Mr. Tomasic had been in better health

---

[4] Although the confidentiality provision was deemed to be an essential term in *Berman*, "what constitutes an essential term of a contract will vary widely according to the nature and complexity of each transaction and must be evaluated on a specific basis." *Miles*, 677 F. Supp. 2d at 1315 (citing *ABC Liquors, Inc. v. Centimark Corp.*, 967 So.2d 1053, 1056 (Fla. Dist. Ct. App. 2007)); *Socarras v. Claughton Hotels, Inc.*, 374 So.2d 1057, 1060 (Fla. Dist. Ct. App. 1979) ("There is no definitive list of essential terms that must be present and certain to satisfy the statute of frauds.  Rather, the essential terms will vary widely according to the nature and complexity of each transaction and will be evaluated on a case by case basis[.] . . . [W]hat is reasonable in any case must depend upon the subject-matter of the agreement, the purpose for which it was entered into, the situation and relation of the parties, and the circumstances under which it was made.").  Plaintiffs do not explain why, under the present circumstances, the confidentiality provision should be deemed to be an essential term.  In fact, the parties' conduct seems to indicate otherwise: when presented with the confidentiality provision as part of the Settlement Agreement and Release of All Claims, Plaintiff Hoover executed the agreement and purported to do the same on behalf of her husband.

> at the time of mediation, he would have actively participated and not have signed the agreement.
>
> Dr. Hoover felt duress because of Mr. Tomasic's severe illness and exhaustion from being his fulltime caregiver. Since being in the hospital, Mr. Tomasic's health has greatly improved and he can fully participate in all proceedings and motions including this one.

(Doc. 184 at 2-3; *see also id.* at 4-5 ("At the time Mr. Tomasic signed the agreement, he essentially had a gun to his head because of his shortness of breath and lack of oxygen. The severity of his distress is supported by the fact that he was admitted to Halifax Hospital on November 8, 2017 and discharged on November 14, 2017.").)

"In order to set aside a settlement agreement based upon a claim of duress, the moving party must prove two elements: (1) the settlement agreement was executed involuntarily, and thus not as a choice of free will; and, (2) the other contracting party exerted some improper and coercive conduct over the moving party to effectuate the settlement." *Clark v. Sch. Bd. Of Bradford Cnty.*, Case No. 3:09-cv-901-J-34TEM, 2010 U.S. Dist. LEXIS 120216, *9 (M.D. Fla. Oct. 13, 2010) (report and recommendation adopted on Nov. 12, 2010). "Duress results from 'an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition.'" *Id.* at *10. "Generally, only improper influence from one of the

contracting parties to a settlement will be sufficient to set aside a settlement agreement on the basis of fraud, duress or coercion."  *Id.*

Here, Plaintiffs have not identified any improper conduct attributable to Defendants.[5]  Instead, they allege that Mr. Tomasic "was under severe duress at the time of mediation from his congestive heart failure" and Ms. Hoover was under "duress because of Mr. Tomasic's severe illness and [her own] exhaustion from being his fulltime caregiver."  (Doc. 184 at 2-3.)  Other than Plaintiffs' vague assertion that Mr. Tomasic's "illness was due to the actions and inactions taken by Travelers" (*id.* at 2), Plaintiffs have not identified any specific misconduct on behalf of Travelers, or any of the other Defendants, at the time of mediation as the cause of the alleged duress.  Also, Plaintiffs contend that Ms. "Hoover felt duress *because of* Mr. Tomasic's severe illness" (*id.* at 3 (emphasis added)), while at the same time, somewhat inconsistently, they contend that she "did not recognize how ill he was and that he was too ill to actively participate in the mediation" (*id.* at 2).  Further, by Plaintiffs' own admission, it was Dr. Hoover, not any of the Defendants in this case, that "pressured [Mr. Tomasic] to sign on October 26, 2017."  (*Id.* at 3.)

_____

[5] In fact, as explained by Mr. Eubanks, all Defendants and their representatives were in a completely different room, all the way across the office space, for the entire mediation conference, and all parties, attorneys, and representatives separately executed the mediation agreement.

Assuming that Mr. Tomasic was suffering from congestive heart failure at the time of mediation, which Dr. Hoover admittedly did not recognize, Plaintiffs have not presented any evidence of incapacity in the form of an affidavit or declaration by a Plaintiff or a treating physician, or any other evidence to that effect. "Mere mental weakness is insufficient to set aside an agreement if the person had sufficient intelligence to understand the nature and effect of the transaction and acted upon his own free will. Feebleness of body or mind does not, without more, create a presumption of incompetence or authorize a court to set aside a contract." *Shepard v. Fla. Power Corp.*, No. 8:09-CV-2398-T-27TGW, 2011 WL 1465995, *3 (M.D. Fla. Apr. 18, 2011) (citing, *inter alia*, *Murrey v. Barnett Nat'l Bank of Jacksonville*, 74 So.2d 647, 649 (Fla. 1954)). There is no allegation that Mr. Tomasic could not understand the nature and effect of the agreement.[6] Also, since Dr. Hoover did not recognize how ill her husband was at the time of mediation, Plaintiffs cannot, and do not, allege that either Defendants or the mediator, or both, were aware of his condition and somehow took advantage of it. *See Shepard*, 2011 WL 1465995 at *4. The same applies to Dr. Hoover: assuming she alleges incompetence due to her own exhaustion, there is

---

[6] Only after receiving Defendants' responses to Plaintiffs' Motion to Set Aside, Plaintiffs stated, for the first time, in their Response to Travelers' Motion for Sanctions that "Mr. Tomasic did not understand the agreement on October 26, 2017 and did not exercise free will." (Doc. 192 at 5.)

no evidence that the opposing parties and/or the mediator were aware of it or that

it impaired her ability to understand the nature and effect of the agreement.

Plaintiffs also contend that the mediation agreement should be set aside

based on undue influence, fraud, non-disclosure, or mistake, which they describe

as follows:

> . . . Dr. Hoover felt undue influence because of the announcement of [Southern's] expert for the first time at mediation.
> The other breach of the conditions necessary for reach [sic] a valid agreement was the presentation by counsel for Southern of a summary of their alleged expert's appraisal of Sunny.  The Plaintiffs were unaware of the name of the expert until the mediation and had/have never received a copy of the alleged expert's report.  The Plaintiffs never received any notification that eSouthern [sic] had an expert prior to the end of discovery on September 22, 2017.  The plaintiffs have never read this alleged report.  The failure by Ms. Winicki to reveal her alleged expert is either fraud or by nondisclosure [sic] or mistake.  Either way, the bombshell disclosure at mediation of this appraisal by an alleged expert is enough to invalidate the agreement.  Since the defendant's expert had not been disclosed during the discovery period, his report is barred from consideration at mediation, arbitration or at trial.

(Doc. 184 at 3-4.)

In response, Southern states:

> Plaintiffs allege they were made aware of [Southern's] expert at mediation, as well as "a summary" of the expert's appraisal of the vessel at issue.  Therefore, Plaintiffs were presented the information during mediation and already had this information *at the time* that they entered into the settlement agreement.  This is not new information that came to light after the settlement was reached with

> Plaintiffs.  Plaintiffs had knowledge regarding this information and were able to utilize this knowledge when entering into their decision at the mediation to agree to the settlement agreement.  If it was Plaintiffs' position that the expert was not disclosed timely, Plaintiffs were entitled to consider the same when considering settlement during mediation. [Southern] has not been able to locate authority wherein it has been determined that the disclosure of a witness at mediation would be a lawful basis to invalidate a settlement.

(Doc. 187 at 3-4 (emphasis in original).)  Southern adds that its failure to disclose the expert prior to the mediation conference was harmless as it would have certainly afforded Plaintiffs the opportunity to depose the expert prior to the dispositive motions deadline.  (*Id.* at 4.)  Southern explains that the expert report had not been completed as of the date of the mediation because, *inter alia*, the expert was performing unexpected work due to the hurricanes.  (*Id.*)

The Court agrees with Southern that despite Plaintiffs' complaints that they were not aware of Southern's expert and did not receive a copy of his report prior to the mediation, they nevertheless proceeded with the settlement even after becoming aware of the expert and his opinions.  There is no indication that Plaintiffs raised any objections with respect to this expert at the time of mediation. Also, as stated in Mr. Eubanks's Opposition, Plaintiffs were free to end the mediation at any time, but instead of doing that, they participated in the mediation for hours and came to an agreement as to all of the essential terms.  In any

13

event, Plaintiffs have not cited and the undersigned is not aware of any legal authority that would require the Court to invalidate the settlement as a result of the disclosure of Defendant's expert after the discovery deadline.  To the extent Plaintiffs claim they were defrauded by Southern, they have not shown that Southern, or any other Defendant for that matter, has "made a deliberate and knowing misrepresentation designed to cause, and actually causing[,] detrimental reliance by the [P]laintiff[s]."  *Connecticut Gen. Life Ins. Co. v. Jones*, 764 So.2d 677, 682 (Fla. Dist. Ct. App. 2000).

Plaintiffs also claim, without any explanation, that they were unduly influenced to sign the mediation agreement.  However, as stated previously, all Defendants and their representatives were in a completely different room, all the way across the office space, for the entire mediation, and all parties, attorneys, and representatives separately executed the mediation agreement.  To the extent Plaintiffs suggest that the mediation agreement should be set aside due to mistake, this argument should also be rejected.  As none of Defendants claims a mistake, Plaintiffs are apparently suggesting there was a unilateral mistake.  However, "[a] mistake, whether unilateral or mutual, must go to a material, substantial element of a contract in order to justify rescission."  *Williams, Salomon, Kanner, Damian, Weissler & Brooks v. Harbour Club Villas*

14

*Condominium Ass'n, Inc.*, 436 So.2d 233, 235 (Fla. Dist. Ct. App. 1983).  Here,

Plaintiffs have not identified any specific mistake, let alone a mistake that goes to

a material, substantial element of the mediation agreement.  Based on the

foregoing, Plaintiffs' Motion to Set Aside should be denied.[7]

In a separate filing, titled "Notice to the Court," Plaintiffs contend that "the

mediation agreement had a clause that made it void after thirty days."  (Doc. 191

at 1 ("The Plaintiffs had not signed the document sent to them by the Defendants

within thirty days, therefore, the mediation agreement became void.").)  The

undersigned has reviewed both the Mediated Settlement Agreement (Doc. 200)

and the Settlement Agreement and Release of All Claims (Doc. 201), which were

filed under seal pursuant to the Court's Order, and finds no merit in Plaintiffs'

position that the settlement agreement became void after 30 days.  The Mediated

Settlement Agreement actually provides that Travelers will pay to Plaintiffs an

agreed-upon sum in full and complete settlement of all of Plaintiffs' claims in this

action against all Defendants "within 30 days from [P]laintiffs' execution and

delivery of a release in form satisfactory to counsel for [D]efendants."  (Doc. 200

---

[7] Both Travelers and Eubanks moved for an award of attorneys' fees and costs associated with responding to Plaintiffs' Motion to Set Aside.  Because they did not include a memorandum of law in support of their request for fees, the undersigned recommends that their request be denied.  The undersigned will address separately these Defendants' respective requests for sanctions as raised in their respective motions.

at 1.)  As such, there is no merit in Plaintiffs' contention that the mediation agreement became void after 30 days.

Because the "[d]istrict courts have inherent power to enforce settlement agreements . . . [which] are highly favored and will be enforced whenever possible," *Swisher Int'l*, 2018 WL 707421 at *1, and Plaintiffs have not presented any valid reasons for invalidating the agreement in this case, the undersigned recommends that the parties' settlement agreement be enforced.

### B.    Travelers' Motion for Sanctions

Travelers moves for sanctions against Plaintiffs for their allegedly "bad faith litigation tactics in failing to comply with the terms of the Parties' [M]ediated Settlement Agreement, and Plaintiffs' subsequent filing of their frivolous Motion to Set Aside Mediation Agreement," pursuant to Fla. Stat. § 57.105(1) and the Court's inherent authority to impose sanctions, including attorney's fees, for a party's bad faith litigation tactics.  (Doc. 188 at 1, 4.)  Although the undersigned found that Plaintiffs' reasons for setting aside the settlement agreement were insufficient, this finding does not imply that Plaintiffs should face sanctions for filing their Motion to Set Aside.  The Court's reading of Section 57.105 of the Florida Statutes or the Court's inherent authority to impose sanctions for a litigant's bad faith conduct, does not compel a contrary conclusion.

Section 57.105(1) of the Florida Statutes compels an award of reasonable attorney's fees to the prevailing party "on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party . . . knew or should have known that a claim or defense when initially presented to the court or at any time before trial: (a) [w]as not supported by the material facts necessary to establish the claim or defense; or (b) [w]ould not be supported by the application of then-existing law to those material facts."  Fla. Stat. § 57.105(1). Although attorney's fees pursuant to Section 57.105 may be awarded to a prevailing party in a lawsuit brought in federal court, Section 57.105(4) contains a safe harbor provision requiring the moving party to serve the offending party with the motion at least 21 days before the motion is filed with the Court.  *Fitzgerald v. Regions Bank*, No. 5:13-cv-36-Oc-10PRL, 2014 WL 129066, *3 & n.2 (M.D. Fla. Jan. 14, 2014).  It does not seem that Travelers has complied with this safe harbor provision prior to filing its Motion.  However, regardless of Travelers' compliance with Section 57.105(4), Defendant has not shown that the *pro se* Plaintiffs in this case knew or should have known that their Motion to Set Aside was not supported either by the facts or by the applicable law on which it was based at the time it was filed.  As discussed earlier, when they moved to set aside the settlement agreement, Plaintiffs believed, albeit mistakenly, that the

17

settlement agreement was rendered invalid by, *inter alia*, the inclusion of a confidentiality provision.  Plaintiffs' conduct in filing the Motion to Set Aside not only does not meet the requirements of Section 57.105(1),[8] but also does not evidence bad faith on Plaintiffs' part, which is necessary before the Court can impose sanctions "for conduct that abuses the judicial process" under its inherent authority.  *Fitzgerald*, 2014 WL 129066 at *4.

### C.    Eubanks's Motion for Fees

Defendant Eubanks also moves for an award of attorney's fees as a sanction against Plaintiffs pursuant to Fla. Stat. § 57.105(1).[9]  He argues that Plaintiffs' Motion to Set Aside has no merit as it is based on facts that are inaccurate and law that does not apply to the facts.  However, as stated earlier, Defendant has not shown that the *pro se* Plaintiffs in this case knew or should have known that their Motion to Set Aside was not supported either by the facts or by the applicable law on which it was based at the time it was filed.  Because the undersigned does not find that there was a complete absence of a justiciable

---

[8] As stated in *Bitterman v. Bitterman*, 714 So.2d 356, 364-65 (Fla. 1998), "section 57.105 fees can only be awarded in cases where there is 'a complete absence of a justiciable issue of either law or fact raised by the losing party.'" The undersigned does not find that there is a complete absence of a justiciable issue of either law or fact raised by Plaintiffs in their Motion to Set Aside.

[9] Mr. Eubanks represents that his Motion for Fees was served on Plaintiffs more than 21 days prior to filing it with the Court, as required by Fla. Stat. § 57.105(4).

issue of either law or fact raised by Plaintiffs' Motion to Set Aside, sanctions are not appropriate under Section 57.105(1).

Accordingly, it is respectfully **RECOMMENDED**:

1.      Plaintiffs' Motion to Set Aside (**Doc. 184**) be **DENIED**.[10]

2.      Eubanks's Motion to Enforce (**Doc. 189**) be **GRANTED**.

3.      Travelers' Motion for Sanctions (**Doc. 188**) be **DENIED**.

4.      Eubanks's Motion for Fees (**Doc. 194**) be **DENIED**.

5.      Defendants shall contact Plaintiffs and arrange to meet in person within **ten (10) days** of the Court's Order on this Report and Recommendation. At that time, Plaintiff Tomasic shall execute a complete release of all claims in this action, which Defendants shall provide.  Upon receipt of the executed release, Defendants shall furnish Plaintiffs with the monetary sum noted in the Settlement Agreement and Release of All Claims.  Upon payment of the monetary sum to Plaintiffs, Defendants shall notify the Court that the settlement has been completed.

---

[10] To the extent Plaintiffs request that the Court order binding arbitration, their request is moot.

**DONE AND ENTERED** at Jacksonville Florida, on May 31, 2018.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

*Pro Se* Parties

20